James R. JACKSON, Plaintiff,

v.

Sidney E. POLLICK, an individual, Bonk, Pollick and Strote, a Michigan professional partnership and Pollick and Pollick, a Michigan professional partnership, Defendants.

No. 89–CV–73069–DT.

United States District Court,
E.D. Michigan, S.D.

Oct. 24, 1990.

Michelle E. Vocht, Roy, Shecter & Vocht, P.C., Birmingham, Mich., for plaintiff.

Larry Mason, Plunkett & Cooney, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

FEIKENS, District Judge.

### I. *Background*

On July 5, 1990, defendants filed a motion for partial summary judgment in this alleged legal malpractice action, arguing, *inter alia,* that the statute of limitations had run on plaintiff's cause of action. I heard arguments on this motion on July 27, 1990. After hearing the parties' arguments, I expanded defendants' motion to include the issue of the scope of defendants' representation of plaintiff.

On August 21, 1990, I ordered the parties to appear on September 11, 1990 for an evidentiary hearing on the limited question of the scope of defendants' representation of plaintiff. Defendants claimed that plaintiff retained them only for the limited purpose of handling plaintiff's workers compensation claim. To the contrary, plaintiff contended that his workers compensation claim arose out of related discrimination claims and that defendants committed legal malpractice by failing to pursue his employment discrimination claims.

Plaintiff left the Highland Park School District in September 1979, where he had served as a counselor and a teacher, as a result of employment practices and policies that adversely affected him physically and emotionally. He hired Bernard Fieger as his attorney to represent him. Fieger filed a workers compensation action against the Highland Park Schools on plaintiff's behalf. In the Spring or Summer of 1980, Jackson terminated his attorney-client relationship with Fieger. Plaintiff then hired

Pollick to represent him on approximately October 24, 1980. Defendant Pollick represented plaintiff in a successful workers compensation trial and appeal. On November 25, 1987, the Appeal Board found that plaintiff established a work-related personal injury and that he was completely disabled. Plaintiff filed a complaint alleging legal malpractice against defendants on October 17, 1989.

■ At the evidentiary hearing I heard testimony from plaintiff James Jackson and defendant Sidney Pollick. As a result of testimony and exhibits offered at the hearing, I find that defendant Pollick limited his representation of plaintiff to the workers compensation claim. Accordingly, I GRANT summary judgment for defendants.[1]

## II.  Analysis

Summary judgment is appropriate only when no genuine issue of material fact remains to be decided so that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure ("FRCP") 56. No material issue of fact exists for trial if, in viewing the evidence in a light most favorable to the non-moving party, a reasonable jury could not return a verdict in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The party moving for summary judgment bears the initial burden of supporting its motion that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If that burden is met, the non-moving party must then come forward with specific facts to rebut that showing. FRCP 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. In addition, if the party bearing the burden of proof fails to make a showing sufficient to establish an essential element of the claim after adequate dis-

covery, summary judgment is proper. *Id.* at 322, 106 S.Ct. at 2552.

■ In an action for legal malpractice, the plaintiff must prove: 1) the existence of an attorney-client relationship; 2) the acts of the attorney which are alleged to have constituted negligence; 3) that the negligence proximately caused the injury; and 4) the fact and extent of the injury alleged. *Pantely v. Garris, Garris & Garris, P.C.*, 180 Mich.App. 768, 778–79, 447 N.W.2d 864 (1989) (citing *Adell v. Sommers, Schwartz, Silver & Schwartz, P.C.*, 170 Mich.App. 196, 204, 428 N.W.2d 26 (1988)); *Basic Food Industries, Inc. v. Grant*, 107 Mich.App. 685, 690, 310 N.W.2d 26 (1981). At issue in this case is the first part of the legal malpractice standard: whether an attorney-client relationship existed between Pollick and Jackson as to claims other than the workers compensation claim.

At the hearing, defendants met their initial burden under the summary judgment standard by supporting their motion that no genuine issue of material fact existed. Defendant Pollick testified that he agreed to represent plaintiff only as to the workers compensation claim. He said that the only other claim plaintiff raised with him was a possible reverse discrimination claim but that he told plaintiff that he had no expertise in employment discrimination. Defendant Pollick, in fact, had an expertise in workers compensation cases.

Given defendants' showing, the burden then shifts to plaintiff to rebut defendants' proofs. Because plaintiff bears the ultimate burden of proof at trial, he must also make a sufficient showing to establish the essential elements of his claim to defeat a motion for summary judgment. Part of plaintiff's burden, therefore, is to show the existence of an attorney-client relationship on claims other than the workers compensation claim.

---

1. A district court has the power to grant summary judgment *sua sponte* if notice and an opportunity to be heard are provided. *Celotex v. Catrett*, 477 U.S. 317 at 326, 106 S.Ct. 2548 at 2554, 91 L.Ed.2d 265; 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2720, at 27–28 (1983). In this case I gave the parties ample notice to prepare for the evidentiary hearing and allowed them to submit briefs before and after the hearing.

■ Under Michigan law, an attorney-client relationship is based on contract and is comparable to other types of employment contracts. *Scott v. Green*, 140 Mich. App. 384, 400, 364 N.W.2d 709 (1985) (Kirwan, J., concurring) (citing *Fletcher v. Board of Education*, 323 Mich. 343, 348, 35 N.W.2d 177 (1948)).[2] Because the parties in this matter never signed an express contract for legal services, plaintiff's evidence must support the existence of an implied contract. Plaintiff testified that he told defendant Pollick about the incidents which he believed supported his discrimination claims.[3] In contradiction to Pollick's testimony, Jackson said that Pollick never told him that he would only represent Jackson as to the workers compensation claim. Plaintiff also stated, however, that Pollick never told plaintiff he would represent him on other potential claims.

Viewing the evidence in a light most favorable to plaintiff, I find that plaintiff did not show that he and defendants ever entered into a contract for legal services other than as to the workers compensation claim. Employment contracts are based on mutuality. Plaintiff's evidence to support the existence of such a contract is his assertion that Pollick never told him that he would only represent Jackson on the workers compensation matter. Summary judgment, however, cannot be defeated by merely questioning the credibility of the moving party.[1] Plaintiff Jackson must make an affirmative showing to establish the essential elements of a legal malpractice claim.

Plaintiff relies heavily on a letter he sent to defendant Pollick dated October 28, 1980. The body of the letter discusses evidence for the workers compensation case that defendant was handling for plaintiff. A second postscript states, "P.P.S. Any insights into the reverse discrimination suit?" Plaintiff argues that this postscript represents a basis on which plaintiff retained defendants. Plaintiff's argument fails because an employment contract is based on mutuality. Because "a unilateral act is not sufficient to create an attorney-client relationship," plaintiff did not meet his burden to defeat a motion for summary judgment. *Scott*, 140 Mich.App. at 400, 364 N.W.2d 709.

It is an accepted practice, particularly in an age of legal specialization, for an attorney to represent a client only as to a specific claim. *See, e.g., Jerry Lipps, Inc. v. Postell*, 139 Ga.App. 595, 229 S.E.2d 78, 79 (1976) ("The relationship of attorney and client is fiduciary in character, but this does not extend beyond the subject matter for which the services of the lawyer have been retained.") Pollick represented Jackson only as to the workers compensation claim, and Jackson cannot now show legal malpractice against defendants as to other potential claims. I find that after adequate discovery, plaintiff cannot produce more than a scintilla of evidence that he had an attorney-client relationship with defendants as to any other matter than the workers

---

2. Two cases from federal district courts in Michigan reflect the view that "[i]n determining whether an attorney-client relationship has been created, the focus is on the putative client's subjective belief that he is consulting a lawyer in his professional capacity, and on his intent to seek professional legal advice." *Dalrymple v. Nat'l Bank & Trust Co.*, 615 F.Supp. 979, 982 (W.D.Mich.1985) (citing *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311 (7th Cir.1978), *cert. denied* 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978)); *Kearns v. Fred Lavery Porsche/Audi Co.*, 573 F.Supp. 91 (E.D.Mich. 1983), *aff'd* 745 F.2d 600 (Fed.Cir.1985), *cert. denied*, 469 U.S. 1192, 105 S.Ct. 967, 83 L.Ed.2d 971 (1985). These cases can be distinguished because they address a lawyer's fiduciary duty to a client, not the existence of an attorney-client relationship for purposes of legal mal-

practice. Furthermore, I do not find these cases controlling because I am required to apply Michigan substantive law in this legal malpractice case brought based on diversity. *But cf. Jackson v. Law Firm of O'Hara, Ruberg, Osborne and Taylor*, 875 F.2d 1224, 1230 (6th Cir.1989) (interpreting Kentucky law and supporting a standard based on an alleged client's reasonable belief).

3. Plaintiff's exhibits support this contention. Pollick, however, testified that all the information plaintiff gave him regarding incidents at the Highland Park Schools was used to support the workers compensation claim.

4. *See* Sonenshein, "State of Mind and Credibility in the Summary Judgment Context: A Better Approach," 78 Nw.U.L.Rev. 774, 797 (1983).

compensation claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252, 106 S.Ct. at 2512.

The cases cited by plaintiff in his brief are not relevant to the question at hand because they address an attorney's duty after an attorney-client relationship has been established. For example, plaintiff cited *In re Corace*, 390 Mich. 419, 434–35, 213 N.W.2d 124 (1973) for the proposition that a lawyer has a duty " 'to probe the outer limits of the bounds of the law, ever searching for a more efficacious remedy.' " While I agree that clients are owed this duty by their lawyers, I find that Pollick limited his representation of plaintiff to the workers compensation claim and that he did fulfill his duty to plaintiff on that matter.

Finding no genuine issue of material fact to defeat summary judgment, as a matter of law plaintiff's claim of attorney malpractice against defendants fails. For the foregoing reasons, defendants are GRANTED summary judgment.

IT IS SO ORDERED.