23 June 2000

3—99–0365    

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 1999

BERTHA LUCILLE NIEHAUS,         ) Appeal from the Circuit Court

                                ) of 10
th
 Judicial Circuit

 Plaintiff-Appellant       ) Peoria County, Illinois

                           )

          v.                    ) No. 98 L 304

                                )

RURAL PEORIA COUNTY COUNCIL     )

ON AGING, INC., and LARRY       ) 

BRACKETT,                       )

                                ) Honorable Robert A. Barnes, Jr.

 Defendants-Appellees.     ) Presiding Judge

_________________________________________________________________

JUSTICE KOEHLER delivered the opinion of the court:

_________________________________________________________________

The plaintiff-appellant, Bertha Lucille Niehaus, appeals the Peoria County circuit court’s grant of the defendant, Rural Peoria County Council on Aging’s (RPCCA), motion to dismiss her negligence action because it was filed beyond the limitation of actions period provided in the Illinois Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act or Act) (745 ILCS 10/8–101 (West 1996)).  The question this court must answer is:  Did the circuit court err when it determined that the RPCCA, a not-
for-profit organization organized for charitable purposes, is entitled to the protections of the Act and, therefore, because Niehaus did not file her claim within the Act's limitation period, her claim is barred?  Because we conclude that the Act does not apply to the RPCCA, we reverse and remand. 

FACTS

On July 25, 1997, the plaintiff-appellant, Bertha Lucille Niehaus, an elderly woman, received injuries while being transported to the local YWCA in a van operated by the RPCCA and driven by Larry Brackett.  Niehaus participated in the YWCA’s Senior World program, which had contracted with the RPCCA for  Niehaus' transportation to and from the YWCA.  Pursuant to the contract, RPCCA provided transportation to and from Senior World adult day care for frail seniors who do not have other appropriate accessible transportation.

According to its mission statement, RPCCA is a not-for-profit organization incorporated in 1982 "to help senior citizens to live independently and with dignity in their own homes."  Its articles of incorporation describe it as "exclusively charitable."  More particularly, it purposes to assist the Central Illinois Agency on Aging, Inc. in determining the needs of rural Peoria County's senior citizens; create better community awareness of their needs and desires; provide a coordinating council to establish service priorities to better meet senior citizens' needs; encourage greater use of existing programs; create greater senior involvement in community activities and services; plan and find sponsors for senior recreational, social service, volunteer and training programs; advocate for seniors throughout rural Peoria County; and, apply for, receive, retain, and administer funds from any source for delivery of services to rural Peoria County senior citizens.  RPCCA provides case management and supervision, emergency homemaker services, meals at local centers and home delivered meals, transportation, and respite care and operates senior centers.  RPCCA's amended articles of incorporation prohibit engaging in propaganda or attempting to influence legislation and participating in any political campaign.  Its constitution and bylaws purpose statement largely reflects the articles of incorporation.  The constitution and bylaws also states that "membership shall not be restricted" and sets membership dues at two dollars per year; however, if payment is a financial hardship, RPCCA may waive dues.

According to RPCCA, the Illinois Department of Transportation pays approximately 50% of its transportation operating expenses and  RPCCA receives approximately one-third to one-half of its funds from the state and federal governments.  That figure rises to 65% of its cash funds when local government funding is included.  In addition to membership dues, RPCCA receives in-kind contributions and raises funds through dinners, garage sales, raffles, and similar activities. 

Niehaus filed a complaint on October 19, 1998 alleging  negligence against the defendants.  The circuit court granted RPCCA's motion to strike Neihaus' allegation that RPCCA is a common carrier and RPCCA subsequently filed an amended complaint.  RPCCA also filed a motion to dismiss under 735 ILCS 5/2—619(a)(5) (West 1998) (section 2–619).  After concluding that the Act applies to RPCCA, the circuit court granted RPCCA's motion and dismissed Niehaus' complaint with prejudice because she did not file the action within one year after the injury occurred or the cause of action accrued as the Act requires.  Niehaus appeals.

ANALYSIS

Section 2-619 provides for the disposition of questions of law and easily proved facts at the outset of the case and, in ruling, the circuit court considers pleadings, depositions, and affidavits on file.  
Wells v. Travis
, 284 Ill. App. 3d 282, 285, 672 N.E.2d 789, 792-93 (1996).  The motion should be granted and the complaint dismissed if, after construing the document in the light most favorable to the nonmoving party, no set of facts can be proved entitling the plaintiff to recover.  
Wells
, 284 Ill. App. 3d at 285, 672 N.E.2d 793.  All well-pleaded facts alleged in the complaint are taken as true and the court is concerned only with a question of law on the pleadings.  
Wells
, 284 Ill. App. 3d at 285, 672 N.E.2d at 793 citing 
Nikolic v. Seidenberg
, 242 Ill. App. 3d 96, 98-99, 610 N.E.2d 177 (1993).  This court’s review, therefore, is 
de novo
.

Niehaus argues that the circuit court erred when it concluded that the Act applies to RPCCA and, accordingly, dismissed her complaint.  She contends that the Act’s purpose is to protect local public entities from liability arising from the operation of government and that RPCCA is not a local public entity.  It is not organized for the purpose of conducting public business; rather, it is a not-for-profit corporation organized for charitable purposes.  Niehaus maintains that RPCCA receives a large share of its funding from private sources, has a membership requirement, and offers its services only to seniors and not to members of the public at large. 

RPCCA maintains that it conducts public business and, therefore, is subject to the Act.  RPCCA argues that it promotes traditional government-like functions; conducts activities that are also government activities; receives government funding; carries out activities under statutory authority; furthers both federal and state goals; and does not restrict its services to its members.  RPCCA notes that it receives government funding pursuant to the Public Transportation Act (30 ILCS 740/1-1 
et seq
. (West 1993)).  It further notes that it receives funds through the Older Americans Act of 1965 (42 U.S.C. § 3021 (1994)), the purpose of which is to encourage and assist state agencies in providing services to the elderly, and the Downstate Illinois Act on the Aging (20 ILCS 105/1 (West 1992)), which establishes state agencies to receive and disburse state and federal funds to groups developing local services for the elderly. 

The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature.  
McCuen v. Peoria Park District
, 245 Ill. App. 3d 694, 697, 615 N.E.2d 764, 767 (1993).  The Tort Immunity Act is in derogation of the common law and its terms are to be strictly construed.  
Independent Trust Corp. v. City of Chicago Dept. of Water
, 295 Ill. App. 3d 811, 815, 693 N.E.2d 459, 462 (1998).  Accordingly, in deciding whether a public entity is involved, we will strictly construe the Act.  The Act provides, in pertinent part:

“(a) The purpose of the Act is to protect local public entities and public employees from liability arising from the operation of government.  ***.”  745 ILCS 10/1-101.1 (West 1996).  

The legislature has enumerated those local public entities that are included and those that are excluded under the Act as follows:

" 'Local public entity' includes a county, township, municipality, municipal corporation, school district, school board, educational service region, regional board of school trustees, community college district, community college board, forest preserve district, park district, fire protection district, sanitary district, museum district, emergency telephone system board, and all other local governmental bodies.  'Local public entity' also includes library systems and any intergovernmental agency or similar entity formed pursuant to the Constitution of the State of Illinois or the intergovernmental Corporation Act as well as any not-for-profit corporation organized for the purpose of conducting public business.  It does not include the State or any office, officer, department, division, bureau, board, commission, university or similar agency of the State."  745 ILCS 10/1-206 (West 1996).

Section 8-101 of the Act, under which the circuit court dismissed the complaint, provides in pertinent part:

"No civil action shall be commenced in any court against a local entity or any its employees or any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued."  745 ILCS 10/8–101 (West 1996).  

We have identified no Illinois case that precisely defines the Act's terms "organized for the purpose of conducting public business" or "public business."  However, the appellate courts in other districts have recently discussed and decided the issue. The appellate court for the first district determined that a little league association, a not-for-profit corporation, did not conduct public business under the Act.  
Hills v. Bridgeview Little League Ass'n
, 306 Ill. App. 3d 13, 23-24, 713 N.E.2d 616, 625 (1999). The court concluded that the Association, which owned the property on which it played its games, presented no evidence that it was government funded, government run or part of a governmental unit.  In its analysis, the 
Hill
s court relied on 
O'Melia v. Lake Forest Symphony Association
, 303 Ill. App. 3d 825, 830, 708 N.E.2d 1263, 1266 (1999), in which the appellate court for the second district concluded the symphony association was not entitled to the Act’s protections.  The 
O'Melia
 court determined that "public business" should be given its “plain, ordinary, and commonly understood meaning."  
O'Melia
, 303 Ill. App. 3d at 828, 708 N.E.2d at 1265.  The court explained:

" 'Public' is defined as '[p]ertaining to a state, nation, or whole community; proceeding from, relating to, or affecting the whole body of people or an entire community.  Open to all ***.  Belonging to the people at large; *** not limited to or restricted to any particular class of the community.'  Black's Law Dictionary 1227 (6
th
 ed. 1990).  'Business' is defined as an '[a]ctivity or enterprise for gain, benefit, advantage or livelihood.'  Black's Law Dictionary 198 (6
th
 ed. 1990).  Thus, to conduct 'public business' under the Act, a corporation must pursue an activity that benefits the entire community without limitation.  In addition, the phrase 'public business' is also today commonly understood to mean the business of the government." 
O'Melia
, 303 Ill. App. 3d at 828, 708 N.E.2d at 1265.  

The court concluded that the symphony provides its services to subscribers and not to the public at large and its area of concern, 
i.e.
, fine arts, is not an area of traditional government function. Therefore, it concluded the symphony is not a local public entity for purposes of the Act.  
O'Melia
, 303 Ill. App. 3d at 828, 708 N.E.2d at 1266.  Previously, the appellate court for the fourth district concluded that a YWCA is not a public entity entitled to the immunities and defenses of the Act because it is a membership organization that exists for the benefit of its members and not the public at large.  
Johnson v. Decatur Park District
, 301 Ill. App. 3d 798, 811, 704 N.E.2d 416, 425 (1998). 

In contrast, the United States District Court for the Central District of Illinois concluded that a mental health center that received 90% of its funding from state and local sources, 12% of which came from county taxes levied to provide mental health services, fell within the definition of "local public entity" even though it lacked the ability to levy taxes.  
McQueen v. Shelby County
, 730 F.Supp. 1449, 1454 (C.D. Ill. 1990).  Further, in 
Corral v. Chicago Park District
, 277 Ill. App. 3d 357, 364, 660 N.E.2d 89, 94 (1995), the appellate court for the first district concluded that inasmuch as Chicago's Lincoln Park Zoo is located within Lincoln Park and operated by the Chicago Park District it is a local public entity under the Act.  

In 
Smith v. Northeast Illinois Regional Commuter Railroad Corp.
, 210 Ill. App. 3d 223, 228, 569 N.E.2d 41, 43 (1991), the appellate court for the first district was asked to decide whether the railroad corporation METRA is a government entity under the Act and, as such, not liable for punitive or exemplary damages.  
Smith
, 210 Ill. App. 3d at 223, 569 N.E.2d at 41.  The court noted that METRA is a not-for-profit corporation with no shareholders, funded with public funds, and operates a commuter rail line in the public interest.  The court stated:

"the amendment to section 1–206 of the Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 1–206) effective November 25, 1986, includes within the definition local public entity not-for-profit corporations like METRA organized for the purpose of conducting public business.  
Smith
, 210 Ill. App. 3d at 223, 569 N.E.2d at 41.

Our review of these cases leads us to conclude that RPCCA is not a local public entity and, accordingly, is not entitled to the Act’s protections.  It is not specifically included under the Act 

or operated by an entity specifically included under the Act.  Nor is it almost entirely government funded.  Instead, RPCCA is a membership organization that provides limited services to a narrow range of the public.  It receives some government funding, as do countless charitable organizations.  In a tax exemption case, our supreme court stated that "the criteria for determining whether an organization qualifies [as a charitable organization] *** include the requirements that the organization benefit the public at large, reduce the burdens of government, and derive its funds from public and private charity."  
Board of Certified Safety Professionals of the Americas, Inc. v. Johnson
, 112 Ill. 2d 542, 546, 494 N.E.2d 485, 488 (1988).  We do not believe that the characteristics that make a not-for-profit corporation a charitable organization, without more, also qualify it as a local public entity as envisioned by the Act.

Like the second district, we conclude that the Act’s language does not support extending its protections so far as the defendants ask in the case at bar.  We believe that extension is the province of the legislature.  Because we conclude that the RPCCA is not a public entity under the Act, the Act's limitations period does not bar Niehaus' claim.  Accordingly, the circuit court's decision must be reversed.

CONCLUSION

In sum, we conclude that although RPCCA receives some government funding, it restricts its limited services to a particular class of the community and cannot be defined as a local public entity under the Act; therefore, it is not entitled to the protections of the Act.  Accordingly, because the circuit court erred in determining that the Act applied, we reverse and remand.

Reversed and remanded.

BRESLIN and LYTTON, JJ., concur.